UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MANUEL RIOS JR.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No. 1:26-cv-00219-JLT-GSA

**FINDINGS AND RECOMMENDATIONS TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO DENY DEFENDANT'S CROSS MOTION, AND TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY**

**(Docs. 14, 16)**

## I. Introduction

Plaintiff Manuel Rios Jr. seeks judicial review of a final decision of Defendant Commissioner of Social Security denying his applications for disability insurance benefits (DIB) and supplemental security income (SSI) pursuant to Titles II and XVI of the Social Security Act. The matter is before the undersigned for issuance of Findings and Recommendations based on the parties' briefs. After reviewing the record, the undersigned finds that substantial evidence and applicable law do not support the ALJ's decision and recommends that the Court direct entry of judgment in favor of Plaintiff and against Defendant.

## II. Procedural Background

Plaintiff provides the following history of the initial application and remand proceedings, to which Defendant does not object:

> On February 13, 2020, Mr. Rios protectively filed Title II applications for Social Security Disability Insurance (SSDI) and Title XVI application for Supplemental Security Income (SSI), alleging disability beginning June 1, 2021 (AOD). (AR 367-382). The claims were initially denied on September 10, 2020 (AR 263-269) and upon reconsideration on June 14, 2021. (AR 283-296). Mr. Rios then filed a request for hearing by an Administrative Law Judge (ALJ) on March 9, 2020. (AR 243-252). Mr. Rios appeared and testified at an ALJ hearing on January 12, 2022 (AR 36-65) and again on April 29, 2022 (AR 66-126). The ALJ issued a

> partially favorable decision on February 23, 2022. (AR 12-35). Mr. Rios' claim was denied by the Appeals Council (AC) on March 31, 2023 (AR 1-6). Mr. Rios then filed a Complaint in Federal District Court; and the claim was Remanded for a new hearing on November 13, 2023 (AR 1343-1352). On July 12, 2024, the AC issued an Order Remanding the case to an ALJ with respect to the issue of disability prior to December 2020. (AR 1356-1362). On January 7, 2025 (AR 1317-1342) and April 22, 2025 (AR 1289-1316) the ALJ held Remand hearings where Mr. Rios appeared and testified. On June 5, 2024, the ALJ issued an unfavorable decision regarding the period of July 3, 2015 through December 21, 2020. (AR 1265-1288).

MSJ at 1.

## III. Standard of Review

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.

"This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).

Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. See Richardson v. Perales, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

"This is a highly deferential standard of review . . . ." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Id.; see, e.g., Edlund v. Massanari, 253 F.3d

1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" Tackett, 180 F.3d at 1098 (quoting Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Id. (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).

## IV. Evaluating a Claimant's Alleged Disability

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant

numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education, and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

Again, errors in Social Security disability determinations are subject to harmless error analysis. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014); Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012). "An error is harmless if it is 'inconsequential to the ultimate nondisability determination' . . . or 'if the agency's path may be reasonably discerned,' even if the agency 'explains its decision with less than ideal clarity[.]" Treichler, 775 F.3d at 1099.

## V. **The ALJ's Decision**

At step one, the ALJ found "The claimant has not engaged in substantial gainful activity since June 1, 2012, the alleged onset date." AR 1271, Doc. 10-10.

At step two, the ALJ found that "The claimant has the following severe impairments: Degenerative Disc Disease of the Cervical, Lumbar and Thoracic Spine; Peripheral Neuropathy; and Obesity." Of particular relevance to the determination of this case, the ALJ found a non-severe impairment of Major Depressive Disorder. AR 1271

At step three, the ALJ found that, "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." AR 1274, Doc. 10-10

Prior to step four, the ALJ evaluated Plaintiff's RFC and concluded as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally climb ramps and stairs, and never climb ladders, ropes, or scaffolds. He can occasionally stoop, kneel, crouch, and crawl. He can frequently reach, handle, finger, and/or feel with his bilateral upper extremities. He cannot work around hazards, at unprotected heights, or around vibration. AR 1275, Doc. 10-10

At step four, the ALJ found "The claimant has no past relevant work." AR 1279, Doc. 10-10.

At step five, relying on the VE's testimony, the ALJ found that "Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." Specifically, the jobs were: Mailroom Clerk, Office Helper, and "Cleaner, Housekeeping." AR 1280, Doc. 10-10

Accordingly, the ALJ concluded Plaintiff was not disabled since the alleged onset of June 1, 2012. AR 1280. Doc. 10-10.

## VI. <u>Issue Presented</u>

Plaintiff asserts one claim of error:

"The MRFC is not supported by substantial evidence because the ALJ failed to follow the AC Remand Order and properly consider the 2020[1] CE opinion "provided by Dr. Seward that claimant's diagnosed major depressive disorder and alcohol abuse caused moderate limitations in a number of work-related mental functioning (Exhibit B6F pages 7-8)." MSJ at 2, Doc. 14.

### A. <u>Relevant Law</u>

#### 1. <u>RFC Generally</u>

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity (RFC). *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including non-severe ones. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); SSR 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and

[1] Plaintiff explains, "It is noted that there is a typo in the AC Remand Order, in that Dr. Seward CE's opinion at "Exhibit 6F" is dated August 19, 2020 and not 2018, which is within the period at issue. (AR 815-822; 1359)."

resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton,* 799 F.2d 1403, 1408).

**2. More on the Standard of Review**

Section 405(g) of the Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final decision. See 42 U.S.C. § 405(g). The scope of judicial review is limited, and the denial of benefits will only be disturbed if it is not supported by substantial evidence in the record or is based upon legal error. Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018) (citations omitted). The United States Supreme Court interprets "substantial evidence" to mean "more than a mere scintilla," but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 587 U.S. 97, 97, 139 S. Ct. 1148, 203 L. Ed. 2d 504 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). The Ninth Circuit further explains that substantial evidence is "less than a preponderance." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (quoting Desrosiers v. Sec'y of Health & Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988)).

When the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)). While "the ALJ is responsible for determining credibility, resolving conflicts in [*8] medical testimony, and [] resolving ambiguities[,]" those findings "must be supported by specific, cogent reasons." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citations omitted).

Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the ALJ's decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. See Batson v. Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). The reviewing court may enter "a judgment affirming, modifying, or reversing" the Commissioner's decision. 42 U.S.C. § 405(g). However, the reviewing court "may not reverse an ALJ's decision on account of an error that is harmless." Rounds v. Comm'r of the Soc. Sec. Admin., 807 F.3d 996, 1002 (9th Cir. 2015) (quoting Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012)). The reviewing court may also remand the case to the Social Security Administration for further administrative proceedings. 42 U.S.C. § 405(g).

### 3- **Medical Opinions**

For applications filed on or after March 27, 2017, new regulations eliminate a hierarchy of medical opinions and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Instead, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization and other factors. 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the two most important factors, and the agency will articulate how the factors of supportability and consistency are considered. Id. "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." Woods v. Kijakazi, 2022 WL 1195334, (9th Cir. Apr. 22, 2022) at *6.

With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Regarding "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other

medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

To provide substantial evidence of a supportability or consistency finding, an ALJ need only provide "more than a mere scintilla but less than a preponderance" of the evidence. *Tackett*, 180 F.3d at 1098. Supportability is "the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791-92 (quoting 20 C.F.R. § 416.920c(c)(1)). Consistency "means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting 20 C.F.R. § 416.920c(c)(2)).

In addition, neither supportability nor consistency is controlling; they are considered in relation to each other and to any other factors an ALJ finds relevant. 20 C.F.R. § 404.1520c(b)(2).

While a medical source's relationship with the claimant is to be considered, "the ALJ no longer needs to make specific findings regarding these relationship factors." *Woods*, 32 F.4th at 791. Importantly, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings. Id.at 792.

In the end, supportability merely asks whether the results of a specific medical provider's examination and explanation support that medical provider's opinion, whereas consistency is evidence from other medical sources. See, Thomas M. v SSA Comm'r, 2026 US Dist. Lexis 216811. Said otherwise, "Supportability" measures the extent to which the objective medical evidence and supporting explanations provided by the doctor rendering the opinion reinforce that opinion. See 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" on the other hand measures the extent to which a medical opinion is consistent with evidence from other medical sources and non-medical sources in the record. Id. §§ 404.1520c(c)(2), 416.920c(c)(2). Critically,

"an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." Woods, 32 F.4th at 787.

**4. Evaluating Mental Impairments**

"In evaluating mental impairments, an ALJ must rate a claimant's degree of limitation in four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." Spears v. Saul, 842 F. App'x 107, 108 (9th Cir. 2021) (citing 20 C.F.R. § 404.1520a(c)(3)). "These factors are generally analyzed in a Psychiatric Review Technique Form (PRTF) ... at Step Three of the sequential evaluation to determine if a claimant is disabled under the Listing of Impairments; however, the same data must be considered at subsequent steps unless the mental impairment is found to be not severe at Step Two." Restifo v. Astrue, No. ED CV 10-01469, 2011 U.S. Dist. LEXIS 64552, 2011 WL 2415775, at *1 (C.D. Cal. June 15, 2011) (citing SSR 85-16, 1985 SSR LEXIS 18, 1985 WL 56855). Thus, in determining a claimant's mental RFC, the ALJ must fully consider "limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting." 20 C.F.R. §§ 404.1545(c), 416.945(c).

Also, when evaluating mental impairments the ALJ first evaluates "pertinent symptoms, signs, and laboratory findings to determine whether" the claimant has "a medically determinable mental impairment(s)." 20 C.F.R. § 404.1520a(b)(1). If so, the ALJ then "rate[s] the degree of functional limitation resulting" from the impairment. Id. § 404.1520a(b)(2). The ALJ considers four broad functional areas: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." Id. § 404.1520a(c)(3).

Importantly, the Social Security Administration supplemented the five-step general disability evaluation process with regulations governing the evaluation of mental impairments at steps two and three of the five-step evaluation process. See generally 20 C.F.R. § 404.1520a. First,

the ALJ must determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Next, the Commissioner must assess the degree of functional limitations resulting from the claimant's mental impairment with respect to the following functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. §§ 404.1520a(b)(2), (c)(3). These four areas are known as the "Paragraph B" criteria. Id.

Finally, the Commissioner must determine the severity of the claimant's mental impairment and whether that severity meets or equals the severity of a mental impairment listed in Appendix 1. 20 C.F.R. § 404.1520a(d). Under Appendix 1, to satisfy to the Paragraph B criteria, a claimant's mental [*9] impairment renders the claimant disabled if it "result[s] in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(A)(2)(b). A "marked" limitation is a seriously limited ability to function independently, appropriately, or effectively on a sustained basis. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(F)(2)(d). By contrast, an "extreme" limitation is the inability to function independently, appropriately, or effectively on a sustained basis. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(F)(2)(e).

If the Commissioner determines that the severity of the claimant's mental impairment meets or equals the severity of a listed mental impairment, the claimant is disabled. See 20 C.F.R. § 404.1520(a)(4)(iii). Otherwise, the evaluation proceeds to step four of the general disability inquiry. See 20 C.F.R. § 404.1520a(d)(3).

**B.** **<u>Analysis</u>**

To begin, it is helpful to note, as Plaintiff points out, that in the AC order dated July 12, 2024, the ALJ was “instructed to ‘properly consider’ Dr. Seward’s ‘moderate’ limitations.” MSJ at 3.

Specifically,

> "Pursuant to the District Court remand order, the Appeals Council has vacated the prior Administrative Law Judge's decision only with respect to the issue of disability prior to December 22, 2020, and further remands this case with the following orders: - Reevaluate the nature and severity of the claimant's medically determinable mental impairments according to the special technique described at 20 CFR 404.1520a and 416.920a. - Reevaluate the persuasiveness of the medical opinions under the regulatory factors set out in 20 C.F.R. 404.1520c and 416.920c and articulate the consistency and supportability for each opinion. & - Further consider the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and 416.945 and Social Security Rulings 85-16 and 96-8p)".

AR 1268.

As background, Plaintiff underwent a psychological consultative examination administered by Dr. Seward on August 19, 2020. MSJ at 4. Plaintiff provides the following summary of Dr. Seward's opinion, to which Defendant does not object:

> Dr. Seward concluded Mr. Rios is mildly limited with the ability to understand, remember, and perform simple written and oral instructions; moderately limited in the ability to understand, remember, and perform complex written and oral instructions, "due to cognitive deficits associated with a mood disorder"; moderately limited in the ability to maintain regular attendance in the workplace "due to cognitive and functional deficits associated with a mood disorder;" moderately limited in the ability to perform work activities consistently "due to cognitive and functional deficits associated with a mood disorder"; moderately limited in the ability to perform work activities without special or additional supervision "due to cognitive deficits associated with a mood disorder;" moderately limited in the ability to complete a normal workday or workweek without interruptions resulting from his psychiatric condition" due to cognitive deficits associated with a mood disorder"; mildly limited with the ability to accept instructions from supervisors; mildly limited with the ability to interact with coworkers and with the public, and moderately limited with the ability to deal with the usual stresses encountered in the competitive work environment "due to cognitive deficits associated with a mood disorder." (AR 821-822, emphasis added).

MSJ at 3.

The ALJ addressed Dr. Seward's opinion as follows:

> On August 19, 2020, the claimant underwent a psychological consultative examination administered by Dr. Steward[2] who found the claimant to have mild to

[2] The ALJ inadvertently misspelled the doctor's name, Dr. Seward.

> moderate limitations across several mental abilities and aptitudes needed to perform unskilled work. (Ex. B6F). This opinion is partially persuasive. While it was supported by clinical testing, it is inconsistent with the entirety of the record, and the examiner appeared to overly rely on the claimant's subjective assertions which renders the proffered limitations less convincing. For example, the examiner observed that the claimant exhibited adequate concentration and attention, with normal thought process, which is incongruent with a moderate impairment in both maintaining attention and with performing work activities consistently. Especially when the record reveals a lack of psychiatric treatment outside of medication management. Furthermore, the claimant's treatment record reveals an absence of psychiatric symptoms which is inconsistent with a moderate limitation in managing usual stresses encountered. (Ex. B2F/46, 49, 52, 55, 63, 80; B9F/19; B12F/19). Based on the foregoing, I find the record is more consistent with a mild limitation in the four respective Part-B categories.

AR 1277, Doc. 10-10.

### 1. Discussion of the Supportability Factor

First, as to concentration and attention, the ALJ stated, as set forth above, "For example, the examiner observed that the claimant exhibited adequate concentration and attention, with normal thought process, which is incongruent with a moderate impairment in both maintaining attention and with performing work activities consistently." Here, the ALJ was correct that Dr. Seward's mental status examination did reflect that Plaintiff's attention and concentration were adequate. Dr. Seward's more complete mental status exam states:

> During the mental status exam claimant was alert and oriented x4. Speech was normal for tone, rate and prosody. Overall sensory functioning was reported to be intact. Mood was good. Affect was full in range. Claimant denied suicidal and homicidal ideation. <u>Attention and concentration were adequate</u>. Fund of knowledge was adequate. Memory for recently learned information was adequate. Ability for abstraction was adequate. When asked the similarities between an orange and an apple claimant replied, "You can eat them." On proverbs, when asked to explain the saying "don't judge a book by its cover," the claimant replied "Don't judge people." Claimant's insight and judgment appear to be adequate. Claimant's thought process was linear. Thought content was normal. Claimant denied having hallucinations or delusions. (Emphasis added)

AR 817, Doc. 10-8

Plaintiff argues:

> Further, a detailed review of the CE report reveals that the ALJ appears to confuse

> the fact that Dr. Seward clearly stated the ultimate conclusion behind the "moderate" limitations assessed were based on objective testing findings. That is, Dr. Seward unambiguously stated that Mr. Rios suffers from "cognitive deficits associated with a mood disorder" which explains his "memory deficits when information is presented auditorily" which Dr. Seward based on objective testing findings which Dr. Seward concluded were "considered to be a good representation of claimant's psychological functioning" (AR 818, 821, emphasis added). However, the ALJ appears to harmfully and erroneously mischaracterizes these findings as "incongruent" (AR 1272) by "cherry picking" and ultimately confusing Dr. Seward's explanations out of context, specifically that "cognitive deficits associated with a mood disorder" resulted "memory deficits" causing *moderate functional limitations*, with the fact that Dr. Seward stated that Mr. Rios was a "willing participant in the testing process. No deficits in attention and concentration were observed," which Dr. Seward distinguished as "psychological/behavioral" aspect of functioning (AR 821, 1277-78, emphasis added).
>
> MSJ at 5 (emphasis added).

In response, Defendant states:

> In terms of supportability, the ALJ noted that Dr. Steward observed that Plaintiff exhibited adequate concentration and attention with normal thought process, which was incongruent with and failed to support his opinion that Plaintiff had a moderate impairment in both maintaining attention and performing work activities consistently (AR 1278 citing AR 821-22).
>
> Resp. at 5.

It therefore appears that Dr. Seward's opinion, in so far as it pertains to <u>attention and concentration</u>, is not supported by his own mental status examination results.

Next, as to the finding of a moderate limitation in understanding, remembering and performing complex instructions (AR 821), the following detailed WMS-IV testing results are instructive. The WMS-IV results were as follows as to memory:

> ***Working Memory Index***
> The claimant's Working Memory Index (WMI) was obtained by tasks that require the claimant to repeat numbers, forward, backwards, and in sequential order in addition to performing basic mental mathematic calculations. The claimant's index score of 74 is classified in the <u>Borderline range</u>. The claimant's index scores for WMI reflect that they have scored above 4% of same age peers in the standardization sample for Working Memory abilities.
>
> ***Immediate Memory Index (IMI)***
> The Immediate Memory Index (IMI) is a measure of Clients ability to recall verbal

> and visual information immediately after the stimuli is presented. Compared to other individuals his age, the Claimant's immediate memory capacity is in the Borderline range.
>
> ***Delayed Memory Index (DMI)***
> Delayed Memory Index (DMI) is a measure of the claimant's ability to recall verbal and visual information after a 20 to 30-minute delay. The claimant performed in the Borderline range for DMI abilities*
>
> ***Auditory Memory Index (AMI)***
> The Auditory Memory Index (AMI) is a measure of Claimant's ability to listen to oral information, repeat it immediately, and then recall the information after a 20 to 30-minute delay. Compared to other individuals his age, claimant's auditory memory capacity is in the Extremely Low range.
>
> ***Visual Memory Index (VMI)***
> Visual Memory Index (VMI), a measure of memory for visual details and spatial location. The Claimant performed in the Average range for visual memory abilities.
>
> AR 820-21, Doc. 10-8 (emphasis added).

These testing results reveal memory scores in the extremely low range, borderline range, or average range. They corresponded to the 4th, 3rd, 2nd, and <0.1 percentiles. Id. Thus, they support Dr. Seward's opinion that Plaintiff was moderately limited in his ability to understand, remember, and perform complex instructions.

On the other hand, Plaintiff's other cognitive test scores were in the low average or average range, which included: Full Scale IQ (Low average); Verbal Comprehension Index (average); Perceptual Reasoning Index (average); Processing Speed Index (average). Thus, these scores do not support moderate limitations in the other work-related abilities that Dr. Seward identified because Plaintiff's significant memory deficits do not appear to affect Plaintiff's ability to adequately perform on the other cognitive tests as set forth above and repeated here:

> During the mental status exam claimant was alert and oriented x4. Speech was normal for tone, rate and prosody. Overall sensory functioning was reported to be intact. Mood was good. Affect was full in range. Claimant denied suicidal and homicidal ideation. Attention and concentration were adequate. Fund of knowledge was adequate. Memory for recently learned information was adequate. Ability for abstraction was adequate. When asked the similarities between an orange and an apple claimant replied, "You can eat them." On proverbs, when asked to explain the

> saying "don't judge a book by its cover," the claimant replied "Don't judge people." Claimant's insight and judgment appear to be adequate. Claimant's thought process was linear. Thought content was normal. Claimant denied having hallucinations or delusions.
>
> AR 817, Doc. 10-8

Thus, even though Dr. Seward's opinion as to moderate limitations as to understanding, remembering, and performing complex written and oral instructions, excluding attention and concentration, is supported by objective cognitive testing, the ALJ nevertheless found that the record was more consistent with a mild limitation in the four respective Part-B categories. In the end, the ALJ did not address mental limitations in the RFC.

When a hypothetical question is posed to a vocational expert, it "must set out all the limitations and restrictions of the particular claimant . . . ." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). "Substantial evidence does not support a finding of disability where the [vocational expert]'s testimony either is contradictory or responds to an inaccurate hypothetical." Hamilton v. Comm'r of Soc. Sec. Admin., 464 F. App'x 681, 682 (9th Cir. 2012).

Before proceeding to step four an ALJ must first determine the claimant's residual functional capacity (RFC). *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC must consider all of the claimant's impairments, <u>including non-severe ones</u>. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); SSR 96–8p. (emphasis added).

In sum, because the ALJ omitted any mental limitations in the RFC, and her questions to the VE likewise omitted questions regarding mental limitations (see, AR 1310 to1314). These omissions were not harmless. "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984); see Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980) (testimony of vocational expert must be reliable in light of medical evidence in order to qualify as substantial evidence). " See, Embrey v. Bowen, 849 F.2d

418, 422 (9th Cir. 1988).

**2. Discussion of the Consistency Factor**

Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and non-medical sources in the claim. See, C.F.R. § 416.920c(c)(2)). Under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* at 792. "The agency must articulate . . . how persuasive it finds all of the medical opinions from each doctor or other source. See, Woods v. Kijakazi, 32 F.4th 785, 791 (9th Cir. 2022). Finally, the Court "must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). "If the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." *Robbins v. SSA*, 466 F.3d 880, 882 (9th Cir. 2006).

If an ALJ errs in her supportability analysis, but provides a sound consistency analysis, reversal of the ALJ's decision is not automatically required. An ALJ's decision will only be reversed if the error is not harmless. Johnathan F. v. Bisignano, No. 24cv1774-WQH (MSB), 2026 U.S. Dist. LEXIS 1863, at *17-18 (S.D. Cal. Jan. 6, 2026); Smith v. Kijakazi, 14 F.4th 1108, 1111 (9th Cir. 2021). Moreover, although the supportability and consistency factors are the most important considerations when evaluating the persuasiveness of medical opinions, even if the ALJ errs in evaluating one of these factors, the error may still be deemed harmless if substantial evidence

supports the ALJ's decision. See generally id.

Here, as will be shown below, the consistency analysis is likewise not supported by substantial evidence.

For ease of reference, the ALJ's full analysis of Dr. Seward's opinion is repeated:

> On August 19, 2020, the claimant underwent a psychological consultative examination administered by Dr. Steward who found the claimant to have mild to moderate limitations across several mental abilities and aptitudes needed to perform unskilled work. (Ex. B6F). This opinion is partially persuasive. While it was supported by clinical testing, it is inconsistent with the entirety of the record, and the examiner appeared to overly rely on the claimant's subjective assertions which renders the proffered limitations less convincing. For example, the examiner observed that the claimant exhibited adequate concentration and attention, with normal thought process, which is incongruent with a moderate impairment in both maintaining attention and with performing work activities consistently. Especially when the record reveals a lack of psychiatric treatment outside of medication management. Furthermore, the claimant's treatment record reveals an absence of psychiatric symptoms which is inconsistent with a moderate limitation in managing usual stresses encountered. (Ex. B2F/46, 49, 52, 55, 63, 80; B9F/19; B12F/19). Based on the foregoing, I find the record is more consistent with a mild limitation in the four respective Part-B categories.

AR 1277-1278, Doc. 10-10. (emphasis added).

When considering the prior administrative findings, the ALJ stated:

> Pertaining to the prior administrative mental findings of state agency medical consultants, I find the opinion at initial and reconsideration to be unpersuasive and internally inconsistent. The medical consultants noted that the consultative examiner's opinion was overly restrictive, yet they found the claimant to have a severe impairment of depression, no impairment in understanding information, a mild impairment in interact with others, a moderate impairment in concentration, and a mild impairment in adaption. (Ex. B3A/10, 12). These findings are incongruous with each. Furthermore, these findings lack sufficient clinical diagnostic evidence and are inconsistent with the record. The claimant is not receiving psychiatric treatment, outside of medication management, and has not required emergency or crisis treatment for his mental health conditions. Although the claimant alleges difficulty with motivation, the claimant's primary care providers' examination findings note his general appearance, mood and behavior is normal which substantiates less serious symptom severity. (Ex. B2F). Based on the foregoing, the record does not support including any non-exertional limitations to the claimant's residual functional capacity, other than what is previously specified.

AR 1278- 1279, Doc. 10-10.

The ALJ's rejection here of the PAMFs identifying mild or non-existent impairments is confusing as the ALJ already concluded Plaintiff had mild limitations in essentially each area of the paragraph B criteria. AR 1273.

Defendant's argument as to consistency begins as follows:

> In terms of consistency, the ALJ noted that Dr. Steward's opinion was inconsistent with the record as a whole, which revealed a lack of psychiatric treatment outside of medication management (AR 1278). Furthermore, the ALJ noted that Plaintiff's treatment record likewise revealed an absence of psychiatric symptoms, which the ALJ reasonably found to be inconsistent with a moderate limitation in managing usual stresses encountered (AR 1278 citing AR 582, 585, 588, 591, 599, 616, 876, 947).
>
> Resp. at 5

Defendant however, provides no authority for a contention that a psychiatric treatment regimen consisting of only medication management is inconsistent with limitations in work related mental functioning.

With respect to the absence of psychiatric symptoms elsewhere in the record, as Plaintiff explains, the ALJ cited many of these records out of context:

> Next, the ALJ fails to explain the significance of "cherry picked" findings in "(Ex. B2F/46, 49, 52, 55, 63, 80; B9F/19; B12F/19)" to contend generally that there was an "absence of psychiatric symptoms which is inconsistent with a moderate limitation in managing usual stresses encountered" (AR 1278) when these records reflect treatment for "low back pain" and injections (AR 581, 585, 588, 591, 599 Exhibit 2F/46, 49, 52, 55, 63); "elbow pain" and injections (AR 616, Exhibit 2F/80); and "hemorrhoids" (AR 947, Exhibit 12F/19). See e.g., L.M. v. Kijakazi, 22-cv-094729-VKD, 2023 WL 638073 (N.D. Cal. Sept. 27, 2023) (emphasis added) (holding that "Most of the records cited by the ALJ concern medical visits during which L.M.'s mental status was observed and recorded in brief notations, but was not being tested, and was unrelated to the issue for which L.M. was being seen and examined, including for orthopedic, gynecological, dental, and other issues such as a cut hand. (internal citations omitted).
>
> MSJ at 8.

Indeed, one would not expect to see psychiatric symptoms reflected in visits that were for unrelated purposes. Thus, the ALJ's reliance on those to establish the lack of psychiatric symptoms

renders the ALJ's inconsistency finding unsupported by substantial evidence. Further, the ALJ acknowledged Plaintiff's medication management treatment, which leads one to the question of why there would be a need for such medication if there were no psychiatric symptoms.

Lastly, while it is true that "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation," that is not the case here. Id.; see, e.g., Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Errors in Social Security disability determinations are subject to harmless error analysis. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014); Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012). "An error is harmless if it is 'inconsequential to the ultimate nondisability determination' . . . or 'if the agency's path may be reasonably discerned,' even if the agency 'explains its decision with less than ideal clarity[.]" Treichler, 775 F.3d at 1099

Because the ALJ omitted any mental limitations from the RFC, the error cannot be said to be harmless. As referenced above, if the RFC fails to reflect all of a plaintiff's credible limitations, the Vocational Expert's (VE) testimony at step five—that a hypothetical claimant with Plaintiff's RFC and vocational profile could perform jobs existing in significant numbers in the national economy—has no evidentiary value. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)

## VII. Findings and Recommendation

For the reasons stated above, substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, the recommendation is that:

1. Plaintiff's Motion for Summary Judgment, ECF No. 14, be **GRANTED.**
2. Defendant's Cross Motion, ECF No. 16, be **DENIED.**
3. That this action be **REMANDED** to the Commissioner of Social Security pursuant to

sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with these Findings and Recommendations.

4. That the Clerk of Court be directed to enter judgment in favor of Plaintiff and against Defendant Commissioner of Social Security.

## VIII. Objections Due Within 14 Days

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson, 772 F.3d 834, 838-39 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **October 28, 2026** **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE